In the Matter of THOMAS ANGERS, Petitioner, *v.* ALFRED LEACH, Respondent.

County Court, Schenectady County, March 1, 1967.

*Litz & Litz* (*Leonard Litz* of counsel), for petitioner. *Harry A. Allen* and *Robert E. Lynch* for respondent.

ARCHIBALD C. WEMPLE, J. As indicated above, testimony was taken at hearings held by a Referee to present proof of facts not covered in the stipulation. The minutes of the hearings have been reviewed and this decision will be amendatory to the findings of the Referee. Argument was heard by the court on the motion to confirm the Referee's Report at Special Term, County Court on February 3, 1967.

The testimony before the Referee and the stipulation clearly indicate that the respondent landlord locked out the petitioner tenant. However, there is no showing of malice on the part of the landlord. It appears that the landlord had received many complaints concerning actions of youths who had congregated in or near the premises and who had harrassed customers of stores in the neighborhood. There was some question whether these obnoxious youngsters were customers of the petitioner or of the drug store located on the first floor of the premises in question. The respondent herein had reason to believe that some of the actions emanated from customers of the petitioner. Also, the common stairway into which access to the leased premises was used received damage. The respondent unfortunately took precipitate action against the petitioning tenant. It does appear that the landlord acted directly and even perhaps wrongfully but not maliciously in shutting out tenant and his customers. A fair appraisal of his action showed that he was motivated to arrest a situation which was causing damage to his property and aggravation to other tenants in the building and to neighboring businesses. The testimony does show that the landlord bolted the door but there is nothing in the testimony to indicate that in so doing, he put the tenant in a state of fear or of fear of personal violence. There is nothing in the record to indicate that the tenant could not have exercised the force necessary to open the door to the common hallway and then to re-enter his premises. There is no testimony that force was used to keep petitioner out of possession. Even though the landlord's action was ill-advised and even illegal, still there is no proof of real fear engendered in the tenant or of force

other than the "bolt" and the "sign" by the landlord. Simply, the landlord bolted the door from inside and the tenant accepted the "locked out" situation. Then he proceeded to start the action to recover possession and for damages under the Real Property Actions and Proceedings Law.

Also, the tenant proffered rent for the months of November and December, 1966 which rent was not accepted by the landlord on grounds of alleged violation of the lease.

The Referee refused to hear testimony of damage to the common hallway. It is doubtful whether proof could have been offered as to who was responsible for such damage. Since such area was not a part of the demised premises such proof, if any, would only go to the question of the landlord's motivation. Exclusion of this proof does not appear to have been prejudicial to the landlord.

Now, we come to the question of damages. This court is not in accord with the award provided in the Referee's report.

The testimony reflects that the gross receipts for the premises before November 16, 1966 averaged approximately $40 per day. There was also testimony that such gross receipts might be doubled or tripled during the Winter months. No testimony was offered to show the cost of operation of a billiard parlor to establish net income but certainly such items as rent, wages, insurance, maintenance and other expenses would affect the profit accruing from such a business. Factoring in such costs of operation, it is reasonable to assume that an owner might enjoy a business profit of 25 to 33⅓% of the total receipts. Now, taking an average of the $40 daily receipts plus double and triple anticipated receipts, a mesne figure of $80 per day is computed. Now, applying a 25% profit to said daily gross average of $80, the petitioner is entitled to recover $20 per day for 79 days or a total of $1,580 in compensatory damages.

Of course, the rent of the petitioner from November 16, 1966 to February 3, 1967 (date of reentry by petitioner-tenant) is abated. This follows because the petitioner was deprived of possession during these 79 days.

Although petitioner has established facts indicating a measure of "forcible entry" by the respondent landlord, there has been no convincing proof of "fear of personal violence to the tenant" as contemplated by section 853 of the Real Property Actions and Proceedings Law. Consequently, punitive or treble damages are disallowed.

However, it is apparent that when the petitioner-tenant resumes possession, he would be entitled to reimbursement in damages for necessary expenses in re-establishing his business.

Although proof of the expenses necessary in this phase is lacking, it would seem that the stipulated allowance of rent-free occupation for the period of November 1 to November 16, 1966 and the month of February, 1967 amounting to approximately $450 would be adequate for this item.

Also, it appears that the tenant was obliged to spend the sum of $20.30 for locksmith and $60 for repair of the air-conditioning equipment. For this the tenant is entitled to reimbursement in the amount of $80.30.